# No. 25-30513

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

LATRICE WALKER, ON BEHALF OF HER MINOR CHILDREN J.M. & Z.W.; HOLLY ROUSE, ON BEHALF OF HER MINOR CHILD M.R.,
*Plaintiffs – Appellees.*

v.

BLAKE HINES, IN HIS INDIVIDUAL CAPACITY; HUNTER JENKINS, IN HIS INDIVIDUAL CAPACITY; RYAN KIRKHART, IN HIS INDIVIDUAL CAPACITY; MARK LYONS, IN HIS INDIVIDUAL CAPACITY; DANNY SOLIZ, IN HIS INDIVIDUAL CAPACITY; NEYSA WASHINGTON, IN HIS INDIVIDUAL CAPACITY,
*Defendants – Appellants.*

---

On Appeal from the United States District Court
for the Western District of Louisiana, Shreveport Division
5:25-CV-258

---

## BRIEF OF APPELLANTS

---

GLENN L. LANGLEY
State Bar No. 8019
glangley@langleyparks.com

JULIANNA P. PARKS
State Bar No. 30658
jparks@langleyparks.com

LANGLEY PARKS & SOTO, LLC
4444 Viking Drive, Suite 100
Bossier City, LA 71111
Counsel for Defendants-Appellants

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Latrice Walker, obo her minor children JM & ZW | Nelson Cameron, Shreveport, LA<br>Devon M. Jacob, Mechanicsburg, PA |
| Holly Rouse, obo her minor child MR | Nelson Cameron, Shreveport, LA<br>Devon M. Jacob, Mechanicsburg, PA |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Blake Hines | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Hunter Jenkins | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Ryan Kirkhart | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Mark Lyons | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Danny Soliz | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Neysa Washington | Glenn Langley & Julianna P. Parks, Bossier City, LA |

| **Other Interested Parties:** | **Counsel for Interested Parties:** |
|---|---|
| Bossier Parish Police Jury | Robert Kennedy & James Ashby Davis, Shreveport, LA |
| Jennifer Johnson | Robert Kennedy & James Ashby Davis, Shreveport, LA |
| Molli Lyles | Robert Kennedy & James Ashby Davis, Shreveport, LA |

| | |
|---|---|
| Sheriff Julian Whittington | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Jesse Bearden | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Lt. Quinton Black | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Sgt. Buck Boudreaux | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Sgt. John M. Carroll | Glenn Langley & Julianna P. Parks, Bossier City, LA |
| Jennifer Grimm | Robert Kennedy & James Ashby Davis, Shreveport, LA |
| | |

I hereby certify that a copy of the above Certificate of Interest Persons has been served on all parties of record by electronic mail on this 18th day of March, 2026.

/s/Glenn L. Langley
Attorney of record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. Rule 28.2.4, the Defendants-Appellants herein respectfully suggest that oral argument is not likely to assist this Honorable Court with adjudicating this matter.

# TABLE OF CONTENTS

Contents Page(s)

CERTIFICATE OF INTERESTED PERSONS .................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS.........................................................................................v

TABLE OF AUTHORITIES ..................................................................................1

JURISDICTIONAL STATEMENT .......................................................................5

STATEMENT OF THE ISSUES...........................................................................5

STATEMENT OF THE CASE..............................................................................7

SUMMARY OF THE ARGUMENT .....................................................................9

A. The Night Deputies are Entitled to Qualified Immunity From All of Plaintiffs' Claim.
B. Plaintiffs Have Failed To Allege Facts Regarding Actions Of The Deputies That, If Proven, Would Constitute Deliberate Indifference.

ARGUMENT .......................................................................................................13

I. Standard of Review

II. Motion to Dismiss Standard
III. Deliberate Indifference
IV. Qualified Immunity
V. The District Court Erred When It Denied The Night Deputies' Motion to Dismiss
A. Plaintiffs Did Not Allege Facts That Show The Night Deputies Acted With Deliberate Indifference In Their Treatment Of The Inmate.

B. The Night Deputies Are Entitled To Qualified Immunity From Plaintiffs' Deliberate Indifference Claims.
C. Plaintiffs Have Not Alleged Facts That Would Support An Award Of Punitive Damages And The Claim For Such Should Be Dismissed.

CONCLUSION ........................................................................................31

CERTIFICATE OF SERVICE ..........................................................................32

CERTIFICATE OF COMPLIANCE .....................................................................33

# TABLE OF AUTHORITIES

## Cases

Anderson v. Creighton, 483 U. S. 635 (1987), 640 ........................ 16, 18, 19, 26, 27

Armstrong v. Ashley, 918 F. 3d 419 (5th Cir. 2019), 422.........................................5

Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011), 742 ................................ 14, 16, 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009), 678 ..........................................................14

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), 545, 570 ...........................13

Berg v. Ri-Vas, (W.D. Tex. Jan. 28, 2026) ..........................................................19

City of Tahlequah v. Bond, 595 U.S. 9 (2021), 12, 13.................................... 16, 17

Cleveland v. Bell, 938 F.3d 672 (5th Cir. 2019), 676, 677, ............................ 14, 15

Cole v. Carson, 935 F.3d 444 (5th Cir. 2019), 451 ...............................................18

Cunningham v. Castloo, 983 F.3d 185 (5th Cir. 2020), 191 ..................................19

District of Columbia v. Wesby, 583 U.S. 48 (2018), 62, 63, 64 ............... 15, 16, 17

Dyer v. Houston, 964 F.3d 374 (5th Cir. 2020), 380...............................................19

Farmer v. Brennan, 511 U.S. 825 (1994), 834.......................................................14

Gobert v. Caldwell, 463 F.3d 339 (5th Cir. 2006), 346............................. 14, 15, 23

Goodson v. City of Corpus Christi, 202 F.3d 730 (5th Cir. 2000), 736 ..................27

Harlow v. Fitzgerald, 457 U.S. 800 (1982), 818 ....................................................18

Hunter v. Bryant, 502 U.S. 224 (1991), 227, 228....................................16, 17, 20

Joseph ex rel. Estate of Joseph v. Bartlett, 981 F.3d 319 (5th Cir. 2020), 329 .....18

Malley v. Briggs, 475 U.S. 335 (1986)..........................................................26, 27

McWilliams v. City of Houston, No. 21-20369, (5th Cir. Nov. 30, 2022) ...........19

Meadours v. Ermel, 483 F.3d 417 (5th Cir. 2007)................................................20

Mitchell v. Forsyth, 472 U.S. 511 (1985) .........................................................5, 20

Morin v. Caire, 77 F.3d 116 (5th Cir. 1996)........................................................13

Mullenix v. Luna, 577 U.S. 7 (2015)...................................................................16

Orr v. Copeland, 844 F.3d 484 (5th Cir. 2016) ...................................................18

Parker v. Blackwell, 23 F.4th 517 (5th Cir. 2022) ..............................................19

Pearson v. Callahan, 555 U.S. 223 (2009).....................................................19, 20

Petta v. Rivera, 143 F.3d 895 (5th Cir. 1998)......................................................27

Phillips ex rel. Phillips v. Monroe County, Miss., 311 F.3d 369 (5th Cir. 2002) .14

Ramirez v. Guadarrama, 3 F.4th 129 (5th Cir. 2021)..........................................20

Reichle v. Howards, 566 U.S. 658 (2012).....................................................16, 17

Rivas-Villegas v. Cortesluna, 595 U.S. 1 (2021)................................................16

Roque v. Harvel, 993 F.3d 325 (5th Cir. 2021) .................................................18

Saucier v. Katz, 533 U.S. 194 (2001) ............................................................17, 20

Siegert v. Gilley, 500 U.S. 226 (1991) ...............................................................20

Thompson v. Upshur County, 245 F.3d 447 (5th Cir. 2001) ...................26, 27, 28

Varela v. Gonzalez, 773 F.3d 704 (5th Cir. 2014)..........................................13, 14

Williams v. City of Baton Rouge, No. 24-30723, (5th Cir. Nov. 4, 2025) .....17, 18

Williams v. Kaufman County, 352 F.3d 994 (5th Cir. 2003).........................30, 31

Wilson v. Layne, 526 U.S. 603 (1999) ................................................................17

**Statutes**

28 U.S.C. Section 1291 ........................................................................................5

28 U.S.C. Section 1331 ........................................................................................5

28 U.S.C. Section 1343(a)(1)-(4)..........................................................................5

42 U.S.C. Section 1983 ............................................................... 5, 7, 14, 16

42 U.S.C. Section 1988 ........................................................................................5

**Rules**

Fed. R. App. P. 4(a) ..............................................................................................5

Fed. R. App. P. 25(b), (c)....................................................................................32

Fed. R. App. P. 28.2.1 ........ ii

5th Cir. R. 28.2.4 ........ iv

Fed. R. App. P. 32(a)(5)-(7) ........ 33

5th Cir. R. 32.1 ........ 33

Fed. R. App. P. 25(b), (c) ........ 32

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. Section 1331 and 1343(a)(1), (2), (3) and (4), as the action was filed by Plaintiffs seeking relief pursuant to 42 U.S.C. Section 1983 and 1988, alleging violations of the Constitution of the United States, Fourth Amendment and Fourteenth Amendments. This Court has appellate jurisdiction pursuant to 28 U.S.C. Section 1291, as this is an appeal from the district court's denial of a claim of qualified immunity on August 25, 2025 (ROA 866), which is an appealable final decision. *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). Defendants-Appellants filed a timely Notice of Appeal on September 12, 2025 (ROA 914) in accordance with Federal Rule of Appellate Procedure 4(a).

## STATEMENT OF THE ISSUES

1. Plaintiffs' factual allegations against Defendants Deputy Blake Hines, Deputy Hunter Jenkins, Deputy Ryan Kirkhart, Lieutenant Mark R. Lyons, Deputy Danny Soliz, and Deputy Neysa Washington are insufficient to establish a constitutional violation or a violation of clearly established law.
    a. Have Plaintiffs alleged a sufficient factual basis to support a claim that Defendants Deputy Blake Hines, Deputy Hunter Jenkins, Deputy Ryan Kirkhart, Lieutenant Mark R. Lyons, Deputy Danny Soliz, and Deputy Neysa Washington, each individually, were deliberately indifferent to the serious medical needs of inmate Jerry McCoy?

b. Was it clearly established on March 5, 2024, that if an inmate exhibits the symptoms of hallucinations, shaking, flailing, agitation, speaking in a confused and disoriented manner and profuse sweating, and hits the cell door multiple times, corrections officers must immediately call emergency medical services in the middle of the night, rather than taking steps to protect the inmate from harming himself, monitoring him, and waiting for the medical staff to arrive at 5:30 a.m.?

c. Can Plaintiffs identify controlling authority establishing beyond debate that if an inmate exhibits the symptoms of hallucinations, shaking, flailing, agitation, speaking in a confused and disoriented manner and profuse sweating, and hits the cell door multiple times, a corrections officer must immediately call emergency medical services, in the middle of the night, rather than taking steps to protect the inmate from harming himself, monitoring him, and waiting for the medical staff to arrive at 5:30 a.m.?

d. Did the district court err when it found that the facts alleged regarding the knowledge and actions by Defendants Deputy Blake Hines, Deputy Hunter Jenkins, Deputy Ryan Kirkhart, Lieutenant Mark R. Lyons, Deputy Danny Soliz, and Deputy Neysa Washington, each individually, are sufficient to defeat each deputy's assertion of qualified immunity?

## STATEMENT OF THE CASE

In this case, Plaintiffs[1] assert that Jerry D. McCoy ("**McCoy**") became an inmate at the Bossier Parish Maximum Security Facility ("**Bossier Max**") on March 3, 2024. Plaintiffs claim that McCoy died from "alcohol related seizures" on March 6, 2024, while he was an inmate at the Bossier Max. [ROA 20 at ¶¶ 8-19]. Plaintiffs sued the Bossier Parish Police Jury, and three jail nurses employed by the BPPJ who saw and/or provided treatment to McCoy as well as the Sheriff and several deputies of the Bossier Parish Sheriff's Office. All Defendants have been dismissed except for Deputy Blake Hines, Deputy Hunter Jenkins, Deputy Ryan Kirkhart, Lieutenant Mark R. Lyons, Deputy Danny Soliz, and Deputy Neysa Washington (the "**Night Deputies**"), Appellants herein, who were the deputies on duty at the Bossier Max the night before McCoy passed away.

In their initial complaint, Plaintiffs asserted federal Fourteenth Amendment inadequate medical care claims under 42 U.S.C. § 1983 and state law wrongful death claims against the defendants. Plaintiffs asserted claims against the Sheriff and the named deputies, including the Night Deputies. [ROA 20 at ¶¶ 5(G), (J) and (L)].

---

[1] The named Plaintiffs in this case are Latrice Walker, on behalf of her biological minor children, JM and ZW; and Holly Rouse, on behalf of her biological minor child, MR (collectively, "**Plaintiffs**"). The Amended complaint asserts that JM, ZW and MR are the children of Jerry D. McCoy.

Multiple motions were filed and Plaintiffs were provided the opportunity to amend and filed an amended and restated complaint. (ROA 27). The Night Deputies (along with the other deputy defendants) then filed a Motion to Dismiss asserting that the Plaintiffs' own allegations in the Amended Complaint show the Night Deputies were not "deliberately indifferent" to McCoy's medical condition and therefore they did not violate his constitutional rights. (ROA 416). The Night Deputies further argued that even if Plaintiffs' factual allegations against the Night Deputies, in their individual capacities, somehow state a claim against each for a violation of McCoy's constitutional right, the allegations are not sufficient to show a violation of "clearly established" law as there is no precedent holding that the alleged specific acts or omissions of the Night Deputies violated any constitutional right. The Night Deputies argued that Plaintiffs' allegations fall far short of Plaintiffs' burden to overcome the Deputies' qualified immunity as to all constitutional claims.

On August 25, 2025, the District Court entered an order denying the motion to dismiss as to the Night Deputies, but granting dismissal to all other parties. (ROA 866). The Night Deputies filed their notice of appeal on September 12, 2025. (ROA 914).

# SUMMARY OF THE ARGUMENT

## A. The Night Deputies are Entitled to Qualified Immunity From All of Plaintiffs' Claims.

Even if all of Plaintiffs' allegations of fact are accepted as true, Plaintiffs' claims against the Night Deputies should be dismissed because the Night Deputies' conduct did not violate clearly established law. Plaintiffs have failed to identify a precedent that establishes that when an inmate exhibits the symptoms Plaintiffs allege were exhibited by McCoy on the night of March 5, 2024 and the early morning hours of March 6, 2024, corrections officers are required to seek immediate treatment for the inmate by calling emergency medical services rather than waiting for the facility medical clinic to open just a few hours later. This Court's jurisprudence requires that the clearly established law be defined narrowly with sufficient specificity to place deputies on notice that their actions are in violation of the constitution. Because no clearly established law existed on March 5, 2024, the Night Deputies were not on notice of the requirement alleged by Plaintiffs that the Night Deputies seek immediate emergency medical attention for an inmate suffering from the symptoms alleged to have been suffered by McCoy.

Furthermore, Plaintiffs have not alleged facts to show that the Night Deputies were informed that McCoy had been diagnosed as suffering from alcohol withdrawal or delirium tremens ("DTs"). On the contrary, Plaintiffs specifically allege that the

medical staff did not inform the Night Deputies that McCoy was placed on watch for alcohol withdrawal. (ROA 270, paragraph 10). Thus, all the Night Deputies knew was that McCoy was exhibiting symptoms. Plaintiffs make the conclusory allegations that these deputies knew that these symptoms were alcohol withdrawal and DTs, but there is no allegation that any of the Night Deputies are medical professionals qualified to make such a diagnosis. Therefore, only the actual symptoms Plaintiffs allege McCoy suffered and the Night Deputies observed should be considered for the purposes of evaluating whether clearly established law exists. On a motion to dismiss, the Court must consider only allegations of fact and not conclusions. Diagnoses such as alcohol withdrawal or DTs, or even seizures, are necessarily conclusions and should not be considered as facts for the purposes of the Court's analysis. Regardless, even if the Court finds that Night Deputies were aware that McCoy was diagnosed as suffering from alcohol withdrawal or DTs, Plaintiffs have still failed to present any clearly established law narrowly defined to have placed the Night Deputies on notice that they were violating McCoy's constitutional rights by not calling for emergency services and having McCoy immediately transferred when he displayed the symptoms alleged rather than waiting until the medical staff arrived at 5:30 a.m.. (ROA 270, paragraph 20).

Moreover, these Night Deputies are treated by the Plaintiffs and by the district court below as a group, and there is no individual allegation of what each of these Night Deputies knew.

## B. Plaintiffs Have Failed To Allege Facts Regarding Actions Of The Deputies That, If Proven, Would Constitute Deliberate Indifference.

At most, Plaintiffs allege that the Night Deputies failed to recognize a serious risk to McCoy, which this Court has ruled is insufficient to establish deliberate indifference. Plaintiffs have alleged no facts that would show that the Night Deputies refused to treat McCoy, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evidence wanton disregard for McCoy's serious medical needs. The facts alleged by Plaintiffs show only that the Night Deputies failed to recognize that emergency medical services should be called rather than waiting for the medical staff to arrive to the jail at 5:30 a.m. Even the trained nurses who are alleged to have recognized that McCoy might be suffering from symptoms of alcohol withdrawal on the prior day failed to recognize the alleged emergency nature of McCoy's condition and call emergency medical services to have McCoy transported to an emergency room when they arrived at 5:30 a.m. They have been dismissed from this case with no finding of deliberate indifference having been alleged. How can the Night Deputies' same alleged failure to recognize the serious risk to McCoy be enough for deliberate indifference?

The facts alleged by Plaintiffs do not show that the Night Deputies knew of a significant risk of harm to McCoy if they failed to act as is required to prove deliberate indifference for failure to act. These allegations fall far short of deliberate indifference, which this Court has held is an extremely high standard to meet. Therefore, Plaintiffs have failed to state a claim for violation of the constitution for inadequate medical care against the Night Deputies, and the claims against them should be dismissed accordingly.

# ARGUMENT

## I. STANDARD OF REVIEW

A denial of a motion to dismiss is subject to *de novo* review.[2]

## II. MOTION TO DISMISS STANDARD

A complaint must plead sufficient factual matter to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Federal Rules of Civil Procedure rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 545. To survive a Rule 12(b)(6) motion, the Complaint's allegations must be sufficient "to raise a right to relief above speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation and footnote omitted). Likewise, a plaintiff must put forth more than generalized, "unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th

[2] *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996).

Cir. 2014) (citations and internal quotation marks omitted); see *also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DELIBERATE INDIFFERENCE

To prove a federal constitutional claim for inadequate medical care, an inmate must prove "deliberate indifference" *by a specific defendant* of a "substantial risk of serious bodily harm" suffered by the inmate, and that this "deliberate indifference" caused the inmate the harm he or she is complaining about. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). When the harm at issue is the death of the inmate, "a plaintiff seeking to recover on a wrongful death claim under § 1983 must prove both the alleged constitutional deprivation required by § 1983 and the causal link between the defendant's unconstitutional acts or omissions and the death of the victim, as required by the state's wrongful death statute." *Phillips ex rel. Phillips v. Monroe Cty., Miss.*, 311 F.3d 369, 374 (5th Cir. 2002).

To establish "deliberate indifference," a plaintiff must show the "unnecessary and wanton infliction of pain" by a *specific* defendant. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). More specifically, to establish deliberate indifference, "a plaintiff must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively dr[e]w the inference that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (internal quotations omitted).

As to the second element, "the Supreme Court has emphasized that a prison official cannot be found liable unless [he or] she knows of an excessive risk to inmate health or safety." *Id.* (internal quotations omitted). "A failure to act unaccompanied by knowledge of a significant risk of harm is insufficient to establish a constitutional violation. It is not enough to identify a significant risk that the official should have perceived but did not." *Id.* at 676 (internal quotations omitted). As to the third element, "[a] showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotations omitted). Deliberate indifference "is an extremely high standard to meet." *Id.*

## IV. QUALIFIED IMMUNITY

The Night Deputies asserted the defense of qualified immunity. In order to overcome the defense, Plaintiffs must show that the Night Deputies violated "clearly established" law. "The dispositive question in this step of the qualified-immunity analysis is whether the violative nature of particular conduct is clearly established." *Cleveland*, 938 F.3d at 677. The "clearly established" standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018). "In other words,

existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 63 (internal quotations and citations omitted). Courts cannot "define clearly established law at a high level of generality," but instead must define it with "a high degree of specificity." *Id.* at 63-64; *see Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021); *City of Tahlequah v. Bond*, 595 U.S. 9, 12-13 (2021).

The Supreme Court has unequivocally held that under its precedents, officers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63, 138 S. Ct. 577, 589 (2018); citing *Reichle v. Howards*, 566 U. S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. Id.; (quoting *Anderson v. Creighton*, 483 U. S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." Id.; *Ashcroft v. al-Kidd*, 563 U.S. 731, 741; 131 S. Ct. 2074 (2011).

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. *Id.* The rule must be "settled law," *Hunter v.*

*Bryant*, 502 U. S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" *Id*. at 589-590; *Ashcroft*, supra, at 741-742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (quoting *Wilson v. Layne*, 526 U. S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). It is not enough that the rule is *suggested* by then-existing precedent. *Id*. at 590. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *Id*.; See *Reichle*, 566 U. S., at 666, 132 S. Ct. 2088, 182 L. Ed. 2d 985. Otherwise, the rule is not one that "every reasonable official" would know. *Id*.

The Supreme Court has repeatedly instructed courts not to define clearly established law at too high a level of generality. *City of Tahlequah v. Bond*, 595 U.S. 9, 12, 142 S. Ct. 9, 11 (2021); See, e.g., *Ashcroft v. al-Kidd*, 563 U. S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id*., *Wesby*, 138 S. Ct. 577, 199 L. Ed. 2d 453, at 467 (quoting *Saucier v. Katz*, 533 U. S. 194, 202, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

In the recent case of *Williams v. City of Baton Rouge*, this Court confirmed the continued applicability of the existing qualified immunity standards. No. 24-30723, 2025 LX 443876, at 9 (5th Cir. Nov. 4, 2025). The Court again stated that

qualified immunity "shields public officials sued in their individual capacities 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.*, citing *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Id.*, (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)). "A court's decision on qualified immunity involves two questions: (1) whether the defendant violated the plaintiff's constitutional or statutory rights; and (2) whether those rights were clearly established at the time of the violation 'such that the officer was on notice of the unlawfulness of his or her conduct.'" *Id.*, quoting *Roque v. Harvel*, 993 F.3d 325, 331 (5th Cir. 2021) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019)).

A right is clearly established if "the contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 9-10, *Anderson v. Creighton*, 483 U.S. 635, 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute

as alleged by the plaintiff." *Id.* at 10, *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original) (citing *Anderson*, 483 U.S. at 641).

"Showing that a right is clearly established 'is difficult,' and this showing is made only when 'it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *McWilliams v. City of Hous.*, No. 21-20369, 2022 U.S. App. LEXIS 33076, at *12 (5th Cir. Nov. 30, 2022); citing *Parker v. Blackwell*, 23 F.4th 517, 522 (5th Cir. 2022) (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)). Plaintiffs in that case argued that the inmate has the right "not to have [his] serious medical needs met with deliberate indifference." *Id.*; *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cty., Tex.,* 245 F.3d 447, 457 (5th Cir. 2001)). But, the Court found, such a proposition is <u>too general</u> to warrant finding that that "every reasonable official" in the defendants' position "would have understood that what he [was or was not] doing violates that right." *Id.*, *Parker*, 23 F.4th at 522.

Qualified immunity "attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). Qualified immunity establishes immunity from suit rather than a mere defense to liability. *Berg v. Ri-Vas*, No. SA-25-CV-00661-

JKP, 2026 LX 85760 (W.D. Tex. Jan. 28, 2026). For this reason, a court must resolve the issue at the earliest possible stage of litigation, and the burden falls on the plaintiff to overcome the assertion. *Pearson*, 555 U.S. at 231-32; *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021).

It is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200-01, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985)). Consequently, the Supreme Court has explained "that courts should resolve the 'purely legal question,' *Siegert v. Gilley*, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991), raised by a qualified immunity defense at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991)).

Finally, at both steps of qualified immunity analysis, each defendant's actions must be assessed individually, not collectively. *See Meadours v. Ermel*, 483 F.3d 417, 421-422 (5th Cir. 2007).

## V. THE DISTRICT COURT ERRED WHEN IT DENIED THE NIGHT DEPUTIES' MOTION TO DISMISS

### A. PLAINTIFFS DID NOT ALLEGE FACTS THAT SHOW THE NIGHT DEPUTIES ACTED WITH DELIBERATE INDIFFERENCE IN THEIR TREATMENT OF THE INMATE.

The Plaintiffs alleged the following facts in their Amended Petition. (ROA 270). McCoy was admitted as an inmate at the Bossier Max on March 3, 2024. Bossier City police informed an unidentified person at the Bossier Max of McCoy's abuse history. On March 3, 2024, no medical assessment for symptoms of alcohol withdrawal was provided to McCoy despite the medical unit's knowledge of alcohol withdrawal. On March 4, 2024, McCoy was taken to sick call, but no action was taken to protect McCoy from alcohol withdrawal. McCoy reported heavy daily liquor use and a tremor was noticed by Nurse Lyles and unidentified nursing staff. Nurse Lyles' documented nursing plan was to monitor daily. However, the corrections staff was not notified of the plan. (ROA 270 at ¶¶ 8-10).

On March 5, 2024, around 1900 hours, the Night Deputies moved McCoy from one cell to another due to McCoy's perception of having enemies. The Night Deputies perceived there to be something wrong with McCoy. McCoy was displaying the symptoms of alcohol withdrawal. McCoy began experiencing seizures and delirium tremens and other bizarre and abnormal behavior. No medical assistance was provided. Beginning early in the morning of March 6, 2024, McCoy began hallucinating again. He was moved to another cell by the Night Deputies. Nighty Deputy Lt. Lyons applied chemical spray to McCoy. No medical assistance was provided at that time. At 0131 hours on March 6, 2024, McCoy was moved to another cell. The Night Deputies knew that McCoy was experiencing a serious case

of alcohol withdrawal. No nurses were on duty and no medical assistance was summoned or consulted by the Night Deputies (until the medical clinic staff arrived at 5:30 a.m.). (ROA 270 at ¶¶ 11-13).

Nurses Lyles, Grimm, and Johnson began to report to duty at about 5:30 a.m. on March 6, 2024. Nurses Johnson, Lyles, and Grimm became aware of McCoy's severe and serious medical condition including his symptoms and withdrawal. Grimm, Johnson and Lyles saw McCoy shaking, and believed McCoy was withdrawing. Grimm and Johnson returned to their normal duties for sick call. Lyles called emergency medical help but when it arrived it was too late, as she observed McCoy was no longer breathing. (ROA 270 at ¶¶ 20-21).

The diagnoses alleged by Plaintiffs, such as DTs or alcohol withdrawal, are <u>conclusions</u> of fact and not allegations of fact and should not be considered to have been known by the Night Deputies. There is no allegation by Plaintiffs as to how the Night Deputies would have known McCoy was suffering from DTs or alcohol withdrawals as there is no allegation that any person qualified to make such a determination conveyed such a conclusion or diagnosis to the Night Deputies. In determining what the Night Deputies knew, only the actual facts alleged to be known to the Night Deputies should be considered. Ultimately, the only facts alleged regarding what the Night Deputies actually observed were that McCoy exhibited the symptoms of hallucinations, shaking, flailing, agitation, speaking in a confused and

disoriented manner and profuse sweating, and that he hit the cell door multiple times. The facts alleged regarding the actions taken by the Night Deputies in response to these observances are that they placed him in isolation, observed him, and took actions that can reasonably be seen as an effort to try and stop him his self-harming behavior of hitting the cell door, by changing cells, spraying him with pepper spray and securing him.

None of these facts alleged are sufficient to establish Deliberate Indifference by any of the individual Night Deputies. McCoy was provided medical care by the Bossier Max medical clinic nurses both prior to and as the night shifted ended when the nurses arrived at 5:30 a.m.. Plaintiffs have alleged no facts which, if true, would prove deliberate indifference. They have alleged no facts that would show the Night Deputies refused to treat McCoy, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would evidence wonton disregard for McCoy's serious medical needs. At most, Plaintiffs have alleged a significant risk should have been perceived but was not, which is insufficient to establish deliberate indifference. See *Gobert*, 463 F.3d at 346.

### B. THE NIGHT DEPUTES ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFFS' DELIBERATE INDIFFERENCE CLAIMS.

The Night Deputies in this matter are entitled to qualified immunity, and immunity from suit, because Plaintiffs have failed to allege facts that show the Night

Deputies violated clearly established law which is beyond debate. While Plaintiffs make broad allegations of what the clearly established law is—that prisoners are entitled to medical treatment for alcohol withdrawals—this is not sufficiently specific to have placed these officers on notice that their failure to act violated clearly established law. Plaintiffs have presented no direct authority that would clearly establish that when an officer observes a symptom or symptoms that could be alcohol withdrawal, they are required to immediately call emergency medical services and have the inmate taken to an emergency facility as Plaintiffs have alleged. Plaintiffs have presented no authority for their assertion that delaying such action for a matter of hours while awaiting the medical staff to arrive violated clearly established law. An alleged medical standard for providing medical care for alcohol withdrawal alleged by Plaintiffs is not sufficient to place the Night Deputies on notice that their actions in this case violated clearly established law. Such a general standard would require officers to have the ability to diagnose delirium tremens ("DTs") or alcohol withdrawal and the severity of such symptoms.

In this case the facts alleged show at most that the Night Deputies failed to recognize DTs and the need for emergency transport, which is not sufficient for deliberate indifference to establish a constitutional violation. The officers knew, and Plaintiffs allege it as a fact, that McCoy would be provided with medical care for the symptoms he exhibited by those trained in the medical field when then nurses arrived

at 5:30 a.m., just as he was previously seen by the medical staff when the medical clinic was open. Plaintiffs do not allege that medical care was not provided, but rather it was not provided *immediately*—a standard even the average emergency room cannot meet. There was no clearly established law at the time that would place these officers on notice that if this inmate showed any symptoms or behavior that could be caused by alcohol withdrawals they were required to diagnose it as such and immediately call emergency medical services in the middle of the night rather than wait a few hours for the medical staff to arrive to provide medical treatment, which occurred at approximately 5:30 a.m..

Plaintiffs assert the general conclusion that medical standards require corrections deputies to immediately transfer an inmate to a hospital if they show signs of alcohol withdrawal, but they present no legal precedent for this requirement. They point to a standard of care that they allege would provide such a requirement. However, a standard of care such as that used in a medical malpractice analysis is not clearly established law. Plaintiffs must point to a specific case. The Night Deputies were required to comply with all clearly established law that placed their behavior beyond debate. At most, with the facts alleged (that are actually facts and not conclusions) Plaintiffs have alleged failure to recognize the seriousness of the symptoms McCoy was displaying. Plaintiffs have pointed to no direct authority that

would have placed the Night Deputies on notice that if they did not immediately call 911 their actions would violate clearly established law.

Plaintiffs failed to allege facts that establish that the Night Deputies knew that McCoy was suffering from alcohol withdrawal or DTs. Plaintiffs allege instead that the Night Deputies were not told by the nurses that McCoy was being watched for alcohol withdrawal. (ROA 270, ¶ 10).

When faced with the Night Deputies assertion of qualified immunity, Plaintiffs asserted the case of *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001) clearly established "the right to be free from deliberate indifference to medical care for delirium tremens". (ROA 726, p. 5). However, this general statement is not sufficient to have placed the Night Deputies on notice that their actions violated clearly established law. In fact, in *Thompson*, the same case, this Court stated that clearly established means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 457; *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). This Court explained that the defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. *Id.*, *Anderson* at 3040; *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 1096, 89 L. Ed.

2d 271 (1986). The "defendant's circumstances" includes facts known to the defendant. *Id.* However, because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity. *Id.*, *Anderson*, 107 S. Ct. at 3040; *Pierce*, 117 F.3d at 871 n.5. An official is eligible for qualified immunity even if the official violated another's constitutional rights. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *Pierce*, 117 F.3d at 872.

This Court in *Thompson* went on to explain that the standard for deliberate indifference, which is subjective, and for qualified immunity are different, and that when assessing the scope of clearly established law for qualified immunity, it is necessary to assert the constitutional right more specifically. *Id.* at 460. This Court stated that to ensure that qualified immunity serves its intended purpose, it is of paramount import, during step two, to define "clearly established law" at the proper level of generality. *Id.* at 457, *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998); Pierce, 117 F.3d at 872. The Court defined the question at issue in *Thompson* very narrowly:

> (a)s to the scope of clearly established law, the question is whether an unmarried adult, under no guardianship or finding of incompetency, who is a pretrial detainee at the jail of a small rural county, holding him on

> transfer from and as accommodation to a larger neighboring county where he is charged and was arrested for DWI, and who while at the smaller county jail becomes delusional and hallucinatory from DTs, has a clearly established constitutional right to have his jailers at the smaller county either force him to submit to medical care for his DTs against his clearly communicated refusal to do so, or make reasonable efforts to locate a substitute decision maker, in lieu of promptly returning him to the custody of the larger county's jail from which he was transferred and which has detoxification facilities the smaller county's jail lacks.

*Id*. at 460.

In finding that the law was clearly established as to another Defendant, the Court stated: "we believe that all reasonable jailers would have recognized the constitutional obligation not to instruct her subordinates not to disturb her at home or summon an ambulance unless a detainee was on the verge of death. To that extent the law was clearly established." *Id*. at 464. Again, the *Thompson* Court was clear that in order to be clearly established law it must be narrowly defined.

After the Night Deputies asserted the defense of qualified immunity, the burden shifted to Plaintiffs to show that clearly established law existed that would place a reasonable officer on notice that his actions violated the law to a sufficient degree of specificity. Plaintiffs have failed to produce any case that clearly established on March 5, 2024, that, to the specificity required by the *Thompson* decision, if an inmate exhibits the symptoms of hallucinations, shaking, flailing, agitation, speaking in a confused and disoriented manner and profuse sweating, and

hits the cell door multiple times, in the middle of the night, corrections officers must immediately call emergency medical services, rather than taking steps to protect the inmate from harming himself and waiting for the medical staff to arrive early the next day. Plaintiffs have failed to find a case establishing law anywhere close to meeting this standard. Therefore, the Night Deputies are entitled to qualified immunity and dismissal of the claims alleged by Plaintiffs against them.

Even if the Court were to adopt a broader finding of fact, and find that Plaintiffs' allegation that the Night Deputies should have reached the conclusion and known that that McCoy was suffering from alcohol withdrawals and DTs specifically, Plaintiffs still have not produced a specific case to put the Night Deputies on notice that such an observation by them required immediate transport to a medical facility given the symptoms observed rather than monitoring, taking steps to keep him from harming himself for a few hours until the medical staff arrived for evaluation. In fact, even the trained medical staff, who Plaintiffs allege had previously recognized his symptoms as symptoms of alcohol withdrawal and placed McCoy on watch for alcohol withdrawal, did not recognize McCoy's symptoms as requiring immediate emergency care when they arrived at 5:30 a.m., and still had taken no action by 8:30 a.m. when McCoy died, and the claims against them were dismissed by the District Court. How can the Night Deputies who are not

trained medical professionals be held to a higher standard of recognizing the alleged emergency nature of McCoy's symptoms, than the medical staff?

An examination of the other cases cited by Plaintiffs in their attempt to assert the Night Deputies violated clearly established law shows that in each case there was an established diagnosis of the alcohol withdrawal or DTs conveyed to them and failure to provide medical care at all. The corrections officers were not required to evaluate the symptoms and reach their own diagnosis of alcohol withdrawal or DTs, as the Plaintiffs allege the Night Deputies herein were required to do.

### C. PLAINTIFFS HAVE NOT ALLEGED FACTS THAT WOULD SUPPORT AN AWARD OF PUNITIVE DAMAGES AND THE CLAIM FOR SUCH SHOULD BE DISMISSED.

An evaluation of the actual facts alleged against the Night Deputies, with the conclusory allegations removed as set forth above, reveals that Plaintiffs have not alleged facts against the Night Deputies to support a punitive damage claim. Plaintiffs' allegations against the Deputies do not show any conduct that comes remotely close to meeting the standard necessary for an award of such damages. "[P]unitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (internal quotations omitted). "The latter standard requires recklessness in its

subjective form, *i.e.* a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.* (internal quotations omitted).

Those claims should be dismissed as well.

## CONCLUSION

This Court should reverse the portion of the District Court's order which denied the Night Deputies' motion to dismiss as to Plaintiffs' Deliberate Indifference claims against them. The Night Deputies should be granted qualified immunity and the remaining claims against them dismissed. The punitive damages claim against the Night Deputies should be dismissed as well.

RESPECTFULLY SUBMITTED BY:

/s/ Glenn L. Langley
GLENN L. LANGLEY
State Bar No. 8019
glangley@langleyparks.com

JULIANNA P. PARKS
State Bar No. 30658
jparks@langleyparks.com

LANGLEY PARKS & SOTO, LLC
4444 Viking Drive, Suite 100
Bossier City, LA 71111
(318) 383-6422 (office)
(318) 383-6405 (telecopier)

*Counsel for Defendants-Appellants Blake Hines, Hunter Jenkins, Ryan Kirkhart, Mark R. Lyons, Danny Soliz, and Neysa Washington*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) and the Federal Rules of Appellate Procedure, on March 18, 2026, on all registered counsel of record, and has been transmitted to the Clerk of Court.

/s/ Glenn L. Langley
**Glenn L. Langley**

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 6235 words.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word 360 with a 14 point font named Times New Roman.

/s/ Glenn L. Langley
**Glenn L. Langley**
*Counsel for Defendants-Appellants Blake Hines, Hunter Jenkins, Ryan Kirkhart, Mark R. Lyons, Danny Soliz, and Neysa Washington*

Dated: March 18, 2026